# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 2:17-CV-14450-ROSENBERG/REINHART

DARIEN X. EVANS,

    Plaintiff,

v.

ST. LUCIE COUNTY SCHOOL DISTRICT,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR
## FINAL SUMMARY JUDGMENT AND CLOSING CASE

**THIS CAUSE** is before the Court on Defendant, St. Lucie County School District's, Motion for Final Summary Judgment, DE 48. The Motion has been fully briefed, and the Court had the benefit of hearing from the parties' counsel at a Motion Hearing held on October 9, 2018, DE 63. The Court has considered Defendant's Motion for Final Summary Judgment, DE 48, Defendant's Statement of Material Facts, DE 58, Plaintiff Darien Evans' Response, DE 52, Defendant's Second Amended Statement of Disputed Facts, DE 59, Defendant's Reply, DE 54, all accompanying exhibits, the arguments heard at the Motion Hearing on October 9, 2018, DE 63, and the record, and is otherwise fully advised in the premises.

## I.    BACKGROUND

### A.  Claims Alleged in the Complaint

Plaintiff's Complaint, DE 1, alleges six claims based on the non-renewal of his employment at Lakewood Park Elementary, a subdivision of Defendant. Count I alleges "Racial Discrimination" in violation of Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 1981 (Section 1981), and the Florida Civil Rights Act (FCRA) for "permitting and condoning the use

of racial slurs by staff." DE 1, ¶ 54. Count II alleges "Racial Discrimination" in violation of Title VII, Section 1981, and the FCRA for "failing to adequately supervise, control or discipline and/or penalize the conduct, acts of failures to act of its agents." DE 1, ¶ 64. Count III alleges "Sexual Harassment" in violation of Title VII and the FCRA for "engag[ing] in co-worker sexual harassment," subjecting Plaintiff to "unwelcome sexual harassment . . . [and] verbal conduct of a sexual nature that had the purpose or effect of unreasonably interfering with his work performance or creating an intimidating, hostile or offensive work environment." DE 1, ¶ 68. Count IV alleges a claim of a "Hostile Work Environment" in violation of Title VII and the FCRA for failing to "prevent the harassment from occurring" and "failing to adequately supervise, control or discipline and/or penalize the conduct, acts or failures to act of its agent or staff." DE 1, ¶¶ 76–77. Count V alleges a claim of "Retaliation" in violation of Title VII and the FCRA for subjecting Plaintiff to "intimidation, harassment, heightened scrutiny and criticism, giving him a Letter of Reprimand, not recommending him for reappointment to his position, all based upon his engaging in the legally protected activity of making a discrimination complaint/grievance." DE 1, ¶ 82. Count VI alleges a claim of "Disparate Treatment" in violation of Title VII and the FCRA for subjecting Plaintiff to disparate treatment by removing him from Lakewood Park Elementary during an investigation. DE 1, ¶ 89.

B. <u>Factual Background</u>[1]

This case arises out of Plaintiff's employment by Defendant at the Lakewood Park Elementary from August, 2014 through the spring of 2017. DE 1, ¶ 10. Plaintiff was employed as a "School Assessment Support Clerk." DE 53-1, 3. Plaintiff is an African American male. DE 59, ¶ 39.

In the spring of 2016, Plaintiff alleges that he was subjected to a hostile and intimidating workplace. *See id.* ¶¶ 11–26. Specifically, Plaintiff felt pressured by his principal to fabricate a statement against another employee of the school. DE 1, ¶¶ 11–16. In addition, colleagues used racially charged language towards Plaintiff, *see* DE 58, ¶ 21, and sent offensive text messages to Plaintiff that included profanity, *see id.* ¶ 20. Plaintiff felt he was "ignored" by colleagues in responding to an incident when a child attempted to leave school grounds. *See id.* ¶ 35.

As a result of this perceived hostile work environment, Plaintiff filed a "grievance alleging discrimination in the workplace," DE 59, ¶ 50, and he met with the Director of Human Resources Operations, Rivers Lewis, in October of 2016, *see* DE 1, ¶ 28. Plaintiff was dissatisfied with Defendant's response to his grievance, and filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant in February, 2017. *See id.* ¶ 36.

During Lakewood Elementary's spring administration of the Florida Standards Assessment (FSA), Plaintiff was tasked with administering the test to six students. DE 58, ¶ 4.

---

[1] The facts stated herein are derived from Plaintiff's Complaint, DE 1, Defendant's Statement of Material Facts, DE 58, and Plaintiff's Statement of Material Facts, DE 59, and all of the exhibits cited therein. Where the parties' facts diverge, their different accounts of the facts are noted. Finally, the Court notes that at the Motion Hearing on October 9, 2018, the parties agreed to the Court's striking of portions of Defendant's Statement of Material Facts, DE 58. This procedural background is explicated more fully in subsection D ("Additional Procedural Background"), below.

During the administration of the test, Defendant alleges, and Plaintiff disputes, that Plaintiff violated several testing procedures, including use of his laptop, failure to circulate around the room to monitor the student, and providing the wrong test to a student. DE 58, ¶ 4. Defendant conducted an investigation of the alleged violations, and found by a preponderance of the evidence that the violations occurred. *See* DE 53-16, 2. Defendant's IT Department also subsequently ran an analysis of the websites visited by Plaintiff during the testing period, and found extensive online activity. *See* 53-16, 29–58. Plaintiff disputes some of the evidence of testing violations and whether his conduct constituted a testing violation. Motion Hearing Tr. 30–33.

Plaintiff was then placed on Temporary Duty Assignment (TDA) on April 17, 2017. DE 59, ¶ 55. On April 26, 2017, Principal Dianne Young also advised Plaintiff that she would not be recommending him for re-appointment to his position for the next school year. DE 59, ¶ 58. Finally, Plaintiff was issued a Letter of Reprimand for his conduct related to the FSA administration, dated April 26, 2017. DE 58, ¶ 7, *see also* DE 53-4 ("Letter of Reprimand"). Whether or not the conduct detailed in the Letter of Reprimand constituted a testing violation is disputed. DE 59, ¶ 7.

C. Plaintiff Conceded Summary Judgment on Claims I, III, and IV.

At the Motion Hearing on October 9, 2018, Plaintiff conceded summary judgment on three of the counts in the Complaint. Plaintiff conceded summary judgment on Counts III ("Sexual Harassment") and IV ("Hostile Work Environment"), because they do not present cognizable claims in the Eleventh Circuit. To begin with, counsel for Plaintiff acknowledged that Count III was based on Plaintiff's sexual orientation. Motion Hearing Tr. 12:23–24 ("MS.

MOON: He believes he was sexually harassed as a homosexual male."). Counsel for Plaintiff confirmed that Count IV was based on Plaintiff's sexual orientation as well. Motion Hearing Tr. 16:12–17 ("THE COURT: Are you saying the hostile work environment is based on sexual orientation and sexual orientation only? MS. MOON: Yes, because the use of the racial slur was only one occasion, and so it can't possibly then rise to the level of being severe and pervasive."). Once Plaintiff's counsel established that Counts III and IV were based solely on Plaintiff's sexual orientation, the Court raised the Eleventh Circuit's unpublished opinion in *Bostock v. Clayton County Board of Commissioners*, in which the court confirmed that there is no cause of action for discrimination based on sexual orientation under Title VII in the Eleventh Circuit. *See* Motion Hearing Tr. 21:7–21; *Bostock v. Clayton Cty. Bd. of Comm's.*, 723 F. App'x 964, 964–65 (citing *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979) and *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1256 (11th Cir. 2017)). Plaintiff's counsel did not object that this is the law of the Eleventh Circuit. As a result, Plaintiff's counsel conceded summary judgment on both counts:

> THE COURT: So as a matter of law, then, Counts 3 and 4 would not survive.
>
> MS. MOON: That is correct.

Motion Hearing Tr. 22:5–7.

Plaintiff also conceded summary judgment on Count I ("Racial Discrimination"), because the Count was intended to press the Plaintiff's contention that the use of a racial slur by one of Defendant's employees was illegal. At the Motion Hearing, Plaintiff's counsel conceded that the one-time use of a slur was not sufficient to sustain the claim:

> THE COURT: [S]o I guess I want to go back to Count 1. . . . It is not a racially hostile work environment claim, so, it is what?

MS. MOON: It is a race discrimination claim based upon the single use of a racial slur.

THE COURT: Okay. But you are conceding that does not give rise to a racially hostile work environment.

MS. MOON: I am. . . .

THE COURT: I'm trying to understand how Count 1 states a cause of action. . . . If it is not a racially hostile work environment, what is Count 1?

MS. MOON: I don't believe that the single use of the racial slur arises to the hostile work environment claim which is why it was made separately. This one was based upon race. . . I don't think Count 1 survives the Court's analysis in any form.

THE COURT: So the Plaintiff would not object to – so, what are you saying with respect to Count 1, it is being –

MS. MOON: I think Count 1 goes the way of Counts 3 and 4 simply because he didn't even hear it himself, which we didn't learn until deposition.

THE COURT: Plaintiff is conceding that the Defendant would prevail on summary judgment as to Count 1, as to Count 3, and as to Count 4?

MS. MOON: Correct, your Honor.

Motion Hearing Tr. 22–24.

As a result of Plaintiff's counsel's concession of summary judgment on Counts I, III, and IV, the remainder of this opinion analyzes only the claims of racial discrimination (Count II), retaliation on the basis of race (Count V), and disparate treatment on the basis of race (Count VI).

6

D. Additional Procedural Background

The Court notes that the factual record in this case is not a model of clarity. However, the Court will endeavor to elucidate what has transpired in this case.

Defendant filed its Motion for Summary Judgment, DE 48, on September 5, 2018. Defendant's Motion improperly incorporated its Statement of Facts into its Motion in violation of Local Rule 56.1. Plaintiff responded on September 19, 2018 at DE 52, and properly filed his Statement of Facts separately at DE 53 on September 20, 2018. Defendant filed its Reply on September 21, 2018 at DE 54. On September 24, 2018, Plaintiff moved to file an amended Statement of Facts, because his previous filing was intended only as a draft. *Compare* DE 53 *with* DE 55-1. The Court at this point sought to clean up the briefing, by ordering Defendant to file a separate Statement of Facts, as required by Local Rule 56.1(a) and in compliance with the Court's Trial Order at DE 6. DE 56. Plaintiff was ordered to file a Statement of Facts in response. *Id.* Defendant was specifically instructed to only present those facts that had been contained within Defendant's original Motion for Summary Judgment. *Id.* Defendant thereupon filed its Statement of Facts at DE 58, and Plaintiff filed its responsive Statement of Facts at DE 59. In addition, Plaintiff moved to file additional argument, because he pointed out, correctly, that Defendant had in fact introduced facts in its Statement of Facts, DE 58, that were not presented in Defendant's original Motion for Summary Judgment, DE 48. *See* DE 60.

The parties proceeded to a Hearing on the Motion for Summary Judgment on October 9, 2018. At the Motion Hearing, the Court raised these issues with the parties. Motion Hearing Tr. 2–10. In an effort to be able to consider the motion expeditiously and efficiently, the Court proposed to the parties that it would accept Defendant's recommendation, DE 61, and strike the

paragraphs of Defendant's Statement of Facts, DE 58, that Plaintiff had objected to; DE 59, DE 60; so that the Court could consider the Motion, DE 48, without any additional briefing. *See* Motion Hearing Tr. 2–10. The parties agreed that the Court would still be entitled to consider all of the record evidence, *see* Fed. R. Civ. Pro 56, even though the offending paragraphs would not themselves be considered in ruling on the Motion. Motion Hearing Tr. 8–10. Both parties agreed to striking the specified paragraphs of Defendant's Statement of Facts at DE 58 (¶¶ 11–17, 22, 26–29, 31–33), and further agreed that the Court could consider the entire record, including Defendant's Rule 30(b)(6) witness, Mr. Clements' deposition, Principal Young's deposition, Assistant Principal Ricksecker's deposition, and Plaintiff's deposition. Motion Hearing Tr. 9–10. Finally, the parties agreed that the Motion was fully briefed and ripe for ruling. *Id.* at 10.

As a result of this procedural history, the Court has proceeded in evaluating Defendant's motion based as much as possible on the Statements of Facts as filed, DE 58 and DE 59, but where necessary, has considered the record holistically.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S.

at 247–48).  A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment.  *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party.  *See Shiver*, 549 F.3d at 1343.

## III.    DISCUSSION

### A.  Count II – Racial Discrimination[2]

Title VII of the Civil Rights Act makes it unlawful for any employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). Similarly, Section 1981 provides that "'[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens,' which in an employment context means protection against discrimination based on race and color. 42 U.S.C. § 1981(a)." *Mosley v. Ala. Unified Judicial Sys., Admin. Office of Courts*, 562 F. App'x 862, 868 (11th Cir. 2014). "Both of these statutes have the same requirements of proof and use the same analytical framework, therefore [the Court] shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). In addition, Florida's Civil Rights Act (FCRA) mirrors the federal Civil Rights Act, and uses the same analysis. *Diaz v. Florida.*, 219 F. Supp. 3d 1207, 1214–15 (S.D. Fla. 2016) ("Florida's equivalent, the FCRA, contains an identical prohibition on . . . race discrimination. *See Torres–Skair v. Medco Health Sols., Inc.*, 595 F. App'x 847, 852 (11th Cir. 2014) ("Title VII and the FCRA prohibit certain employers from discriminating 'against any individual with respect to [his] compensation, terms, conditions, or

---

[2] At the outset, the Court notes that at the Motion Hearing, Plaintiff's counsel confirmed that this count is based factually on Plaintiff's assignment to temporary duty. Motion Hearing Tr. 18:21–23 ("THE COURT: Count 2 is about temporary duty assignment only? MS MOON: Correct."); *see also* Motion Hearing Tr. 20:17–22 ("THE COURT: So, Count 2 and Count 6 are making the same argument, that Mr. Evans was discriminated against by the Defendant based on his race for his temporary assignment. Count 2 and Count 6, is that how the Court should be viewing those two counts? MS. MOON: Yes, your honor.").

privileges of employment, because of such individual's [membership in a protected class]' " (citing 42 U.S.C. § 2000e–2(a)(1); Fla. Stat. § 760.10(1)(a)))).

To establish a prima facie case of racial discrimination under Title VII, "a plaintiff must show (1) []he belongs to a protected class; (2) []he was qualified to do the job; (3) []he was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

The burden is on the plaintiff to establish the fourth prong by producing a comparator who "must be similarly situated in all relevant respects" and who was treated differently than Plaintiff. *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1192 (11th Cir. 2016). "Where, as here, the plaintiff claims that the employer discriminated against [the plaintiff] in meting out discipline, in determining whether the plaintiff and the employees []he says are similarly situated, 'we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Cuevas v. Am. Exp. Travel Related Serv. Co., Inc.*, 256 F. App'x 241, 243 (11th Cir. 2007) (quoting *Burke–Fowler v. Orange County, Fla.*, 447 F. 3d 1319, 1323 (11th Cir. 2006)). Furthermore, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Cuevas*, 256 F. App'x at 243 (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Here, Plaintiff claims he was discriminated against on the basis of his race when his employer moved him to Temporary Duty Assignment (TDA). *See* Motion Hearing Tr. 20:17–22. However, he has not produced an appropriate comparator to establish his prima facie case.

In Plaintiff's Statement of Material Facts, Plaintiff attempts to put forth another Lakewood Elementary Employee, Justin Keim, as a comparator:

> 78. Dianne Young did not report Justin Kiem's alleged testing violation to Human Resources or the District Testing Office for investigation. Exhibit C, pg. 35 lines 5-25, pg. 36 lines 1-8, pg. 75 lines 10-25 and pg. 76 lines 1-9.

> 79. Justin Kiem had a history of complaints concerning sexual harassment and unprofessional conduct. Exhibits L and M.

DE 59, ¶¶ 78–79. The referenced sections of the Young deposition all relate to an accusation that Mr. Kiem (a teacher at Lakewood Elementary) may not have been circulating enough during the administration of the FSA. *See* DE 53-3; 35:5–36:8, 75:10–76:9. In regards to the other evidence proffered by Plaintiff, "Exhibit L" is an email from a former employee, Tammy Smith, to Principal Dianne Young. DE 53-13. This exhibit is hearsay[3] and cannot be considered for summary judgment purposes. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012). "Exhibit M" is a letter from Principal Young to Keim scheduling a meeting to discuss "discourteous conduct or language to an employee on your part." DE 53-14. None of this evidence establishes Keim as an appropriate comparator to Plaintiff. Even if the Court accepted all of the proffered evidence as both true and as admissible, Keim is still insufficient as a comparator because he is not sufficiently similar to Plaintiff. Plaintiff has not introduced evidence to show that he and Keim were similar in their roles, responsibilities, training, or even

---

[3] The exhibit is an email from former employee, Tammy Smith, to the principal, Dianne Young. The email is offered for the truth of the matter asserted, namely that Keim was "not monitoring during FSA." This is hearsay within hearsay, without an applicable exemption from the definition of hearsay under Federal Rule of Evidence 801 or an exception to the rule against hearsay under Federal Rule of Evidence 803. Although Smith's statement to Keim that he was not monitoring his students may be classified as non-hearsay because it was spoken by an employee within the scope of her employment while she was employed by Defendant, pursuant to Federal Rule of Evidence 801(d)(2)(D), the subsequent email, reporting that conversation to Young, would not be covered under the same non-hearsay exclusion. *See* Fed. R. Ev. 801(d)(2)(D). Smith was not acting within the scope of her employment in sending the email and it is unclear whether she was even employed by Defendant at the time the email was sent. *See* Fed. R. Ev. 801(d)(2)(D).

the alleged misconduct, as required by *Cuevas*, 256 F. App'x 241, *Burke-Fowler*, 447 F.3d 1319, and *Maniccia*, 171 F.3d 1364. From this record, the Court also does not have evidence of Keim's race, to establish whether or not Plaintiff was treated differently on the basis of his race.

At the Motion Hearing, Plaintiff initially stated that the comparators were employees Jones and Dawson. Motion Hearing Tr. 26. There, Plaintiff's counsel acknowledged that these two employees did not have similar job titles to Plaintiff, did not commit testing violations, and did not undergo the testing training that Plaintiff did. *Id.* at 26–28. Later on in this discussion, Plaintiff's counsel identified Justin Keim as a third comparator. *Id.* at 28:24–29:5. Again, Plaintiff's counsel acknowledged Keim and Plaintiff did not have similar titles. *Id.* at 29:8. In addition, Plaintiff's counsel acknowledged that while Keim was found to have violated testing policy by "failing to monitor," *id.* at 29:16, there was "no record evidence similar to the Plaintiff's use of a computer," *id.* at 30:17–18.

Accordingly, Plaintiff has not met his burden of producing a comparator to demonstrate that Defendant treated similarly situated individuals differently on the basis of their race. This failure in establishing a prima facie cases entitles Defendant to summary judgment as a matter of law on Plaintiff's claim of racial discrimination under Title VII, Section 1981, and the FCRA in Count II for the reasons stated above.

In the alternative, these claims are also subject to burden shifting under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and even if a prima facie case had been properly established, Plaintiff also failed to demonstrate that Defendant's proffered explanation for his temporary duty assignment was pretextual. This analysis is fully explicated in subsection B "Count V – Retaliation" below.

B. <u>Count V – Retaliation</u>[4]

Title VII prohibits "retaliation against an employee 'because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder].' 42 U.S.C. § 2000e–3(a)." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act. Accordingly, [if] the plaintiff[] cannot maintain a retaliation claim under Title VII," Plaintiff also cannot maintain an a retaliation claim under the FCRA. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998). The Court proceeds to analyze the Title VII claim, with the understanding that the analysis would be the same under the FCRA.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001); *see also Alvarez v. Royal Atl. Developers*, 610 F.3d 1253, 1268 (11th Cir. 2010). The Eleventh Circuit uses the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze indirect claims of Title VII retaliation. *See Crawford*, 529 F.3d at 976. If the plaintiff successfully establishes a prima facie case of

---

[4] At the outset, the Court notes that at the Motion Hearing, Plaintiff's counsel confirmed that this count is based entirely on Plaintiff's status as an African-American. Motion Hearing, Tr. 16:20–25 ("THE COURT: What is the basis for the retaliation? I understand the alleged protected activity is making a discriminat[ion] complaint or grievance, but what does it relate back to, what class? MS. MOON: I think that would have to be as an African-American, not sexual orientation."). In addition, Plaintiff's counsel confirmed that this count is based factually on Defendant's non-renewal of Plaintiff and the Letter of Reprimand. Motion Hearing Tr. 19:1–12 ("MS. MOON: If you look at Count 5, retaliation, paragraph 82, subjected Mr. Evans to intimidation, harassment, heightened scrutiny and criticism, giving him a letter of reprimand and not recommending him to reappointment to his position. THE COURT: Count 5, retaliation, is based on race only and the basis of the retaliation claim based on race is the letter of reprimand? MS. MOON: It is the letter of reprimand and the nonrenewal. THE COURT: And the nonrenewal. MS. MOON: Correct.").

retaliation, the burden shifts to the defendant to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citing *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. *Holifield*, 115 F.3d at 1566.

Disputes regarding the ultimate merits of the employer's proffered explanation do not suffice to demonstrate pretext: "An employer who fires an employee under the . . . honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1363, n.3 (11th Cir. 1999). Furthermore, an employer has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984). "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

The Court assumes, without deciding, that Plaintiff has established his prima facie case of Title VII for race-based retaliation, based on the Letter of Reprimand and Defendant's non-renewal of Plaintiff.

Nevertheless, the Court finds that Defendant has proffered a legitimate and non-discriminatory explanation for both the Letter of Reprimand and the decision not to renew Plaintiff's employment. Defendant points to the various alleged testing violations to explain its decision to both reprimand and non-renew Plaintiff. DE 58, ¶ 4–7. Specifically, in its Statement of Facts, Defendant alleges that Plaintiff's cell phone went off during the standardized Florida

test, that Plaintiff was surfing the internet on his laptop during the test (and specifically, searching the internet for "how to sue the school board"), that Plaintiff was not circulating around the room to monitor students properly, and that Plaintiff gave the wrong test to one student. *Id.* Plaintiff disputes these paragraphs, and instead states that the cell phone ringing was not a testing violation, that Defendant did not put forth evidence as to whether Plaintiff searched for "how to sue the school board," that failing to monitor the students was not a testing violation, and that Plaintiff was not disciplined for giving a student the wrong test. DE 59, ¶ 5. Notably, Plaintiff did not dispute the more general allegation that Plaintiff was using the internet during the test, and the Court focuses its analysis on that internet usage. *See id.*

Both parties direct the Court's attention to the "Investigative Report" appended to Defendant's Rule 30(b)(6) witness, Aaron's Clements' deposition. *See* DE 50-1 and Plaintiff's "Exhibit O," DE 53-16. The Report contains the initial misconduct reporting form submitted by Heather Ricksecker; DE 53-16, 6–7; written statements by Plaintiff's six students; *id.* at 8–13; a Notice to Plaintiff regarding the investigation and his placement on temporary duty; *id.* at 14–15; a copy of the "Test Administrator Prohibited Activities Agreement," signed by Plaintiff; *id.* at 16–17; further communications about the investigation between Plaintiff and Defendants' employees; *id.* at 18–28; and Defendant's IT department's analysis of Plaintiff's internet use during the testing period; *id.* at 29–58.

The Investigative Report states that when confronted by Defendant's employees about the allegations of his misconduct, Plaintiff "did not deny that he was looking at this computer during testing. He stated, 'I do not believe I was doing that, but I cannot remember.'" *Id.* at 3. Later in the report, Plaintiff argues with this characterization of his statements, and states instead

in an email to Clements that "In actuality, I stated that, 'I do not recall bringing my computer in the testing room, but I **do not** believe I did.' Nevertheless, although I did not deny the allegations, 'looking' at my computer or any computer for that matter, is not prohibited." *Id.* at 26 (emphasis in original). This is *not* a denial of the facts as alleged. Following this exchange, Defendant tasked its IT department with analyzing Plaintiff's computer's internet traffic during the time of the exam. *See id.* at 29–58. This forensic analysis uncovered substantial internet activity during the relevant testing period, including visits to sites such as facebook.com, instragram.com, orbitz.com, and jetblue.com. *Id.*

At Plaintiff's deposition, he again did not dispute the allegation that he used his computer during the administration of the state standardized test. DE 49-1, 22–24 (Plaintiff's Deposition, Vol. II, p. 186–89). He only stated that he did not recall whether he was on his computer, despite his previous admissions. *Id.*

Given all of this evidence, and the parties' agreement to the Court's consideration of that evidence, Motion Hearing Tr. 9–10, the Court deems Plaintiff's previous statements as admissions that he was using his computer inappropriately during the administration of the state test. He has not properly disputed this fact in his Statement of Facts or his deposition by stating "I don't recall," so the fact that he was on his computer during the test is deemed admitted. In the alternative, even if Plaintiff had not admitted to the computer use, no reasonable juror, when confronted with this compilation of data points, could reach the conclusion that Plaintiff was not on his laptop during the test administration. As a final note, the Court gave Plaintiff's counsel the opportunity to clarify whether Plaintiff disputes the internet activity as a basis for Defendant's actions at the Motion Hearing. *See* Motion Hearing Tr. 31–32. There, Plaintiff's counsel stated

on the record that Plaintiff's use of his laptop was not in dispute. *Id.* at 31:23–32:2 ("THE COURT: Is it in dispute that the Plaintiff was using his desktop during testing? MS. MOON: I don't believe so. THE COURT: So, it is not? MS. MOON: It is not.). Thus, no reasonable juror could conclude that Plaintiff did not use his laptop during the test administration. Furthermore, there is no evidence to suggest that Plaintiff's use of his computer was authorized or appropriate, and no reasonable juror could conclude otherwise. Defendant has therefore offered a legitimate explanation for issuing the Letter of Reprimand and choosing not to renew Plaintiff's contract with the school.

Plaintiff also disputes that his actions constituted testing violations, but this dispute does not vitiate Defendant's satisfaction of its burden to demonstrate a legitimate reason for its adverse actions against Plaintiff. Defendant is entitled to deference on its interpretation and application of the rules and regulations applied to its staff. *See Damon*, 196 F.3d at 1363, n. 3; *Nix v. WLCY*, 738 F.2d at 1187. Therefore, the Defendant's legitimate, non-retaliatory reason for issuing the Letter of Reprimand and choosing to not renew Plaintiff's employment still stands.

The burden therefore shifts to Plaintiff to demonstrate that this proffered explanation is pretextual, and Plaintiff has not met this burden. In response to Defendant's proffered explanation, Plaintiff takes issue with "Defendant's investigative summary" of the testing violations in a few respects. DE 52, 6. First, Plaintiff argues with the identification of Plaintiff as a "testing coordinator" versus a "School Assessment Support Clerk." *Id.* There is no material distinction between these titles for the purposes of this case. Plaintiff's "Duties and Responsibilities" clearly included maintenance of the "security of all tests" and compliance with testing protocols. *See* DE 53-1, 3. Second, Plaintiff argues that having his cell phone and

computer in the testing room was not a violation, that silencing his cell phone was not a violation, and that looking at a computer during the test was not a violation. While the Court recognizes that there may be some ambiguity in whether an inadvertent cell phone ring, without more, would be a violation, the same cannot be said for the computer use. *See* DE 53-5 ("Test Administrator Prohibited Activities") ("I may not: . . . Use my cell phone, check email, grade papers, or engage in other activities that will result in my attention not being on students at all times"). The training slide deck referred to by Plaintiff at DE 59, ¶ 5, "Spring 2017 Florida Standards Assessments Training Materials for Paper-Based Assessments," clearly states "Your full attention should be on students at all times during testing, and a testing room must never be left unattended. If issues arise during testing, you may need to use your computer or phone to contact your school assessment coordinator; however, it is not appropriate to use the computer or phone for unrelated activities (such as grading or personal communication) during a test session." By citing to this slide deck, Plaintiff conflates an exception for contacting the Assessment Coordinator with the general rule against computer use during testing. When Defendant investigated Plaintiff's computer activity during the testing period, the IT department found extensive online activity between during the testing period. *See* DE 50-1, 35–64 (showing visits to facebook.com, jetblue.com, orbitz.com, and instagram.com, among others).

Aside from these disputes about the details of the Defendant's explanation for issuing the Letter of Reprimand and choosing to not renew Plaintiff, Plaintiff has put forth no evidence of his own to suggest that the Letter of Reprimand and his non-renewal were instead causally connected to Plaintiff's decision to file a Charge of Discrimination with the EEOC. *See* DE 59. "Title VII retaliation claims require proof that '[the] protected activity was a *but-for cause* of the

alleged adverse action by the employer.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)); *see also Diaz v. Florida*, 219 F. Supp. 3d 1207, 1220 (S.D. Fla. 2016).

To the extent that Plaintiff presumes that the temporal proximity of the EEOC Complaint and Plaintiff's reprimand and non-renewal proves causality, Plaintiff has not articulated this clearly, nor would the timeline of events in this case support such a theory. Temporal proximity must be "very close" to prove causation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Plaintiff filed his EEOC Complaint in February, but did not receive the Letter of Reprimand or notice of his non-renewal until April of 2016. *See* DE 1. In addition, "[i]ntervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." *Diaz*, 219 F. Supp. 3d at 1221 (quoting *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011). Here, the EEOC Complaint and the adverse employment actions were separated by two months, and in the intervening period, Defendant became aware of evidence, which Defendant could reasonably believe, that Plaintiff violated the testing procedures, in direct violation of his job description. *See* DE 1, DE 53-1. Accordingly, Plaintiff has not met his burden of establishing that the adverse employment actions taken against him were causally connected to his EEOC Complaint or that Defendant's proffered explanation is pretextual. Defendant is therefore entitled to summary judgment on Plaintiff's Claim for retaliation in violation of Title VII and the FCRA in Count V.

C. Count VI – Disparate Treatment[5]

Title VII also prohibits disparate treatment of employees on the basis of their race. *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (2001). Once again, the Court notes that "[d]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998). Accordingly, the Court's analysis of Plaintiff's claim under Title VII would be the same under the FCRA.

"To establish a prima facie case for disparate treatment in an employment discrimination case, the plaintiff must show that: "(1) []he is a member of a protected class; (2) []he was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) []he was qualified to do the job." *Burke–Fowler v. Orange County, Fla.*, 447 F. 3d 1319, 1323 (11th Cir.2006). To produce evidence of the third prong, the plaintiff must produce a comparator employee who "must be similarly situated 'in all relevant respects'" to the plaintiff. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citation omitted). "The comparator

---

[5] In his Response, Plaintiff argues that Defendant has not presented Plaintiff's "disparate treatment [claim] to the court [sic] for consideration in its Motion for Final Summary Judgment." DE 52, 3. However, Defendant's Motion is for "*Final* Summary Judgment," DE 48 (emphasis added), implying that the Motion was intended to address all counts of the Complaint. The Court confirmed the same with Defendant's counsel on the record at the Motion Hearing. Motion Hearing Tr. 34:3–5. Accordingly, the Court proceeds to consider the parties' arguments on the disparate treatment claim.

In addition, the Court notes that at the Motion Hearing, Plaintiff's counsel confirmed that this count, like Count V, is based entirely on Plaintiff's status as an African-American. Motion Hearing, Tr. 16:20–17:4 ("THE COURT: What is the basis for the retaliation? I understand the alleged protected activity is making a discriminatory complaint or grievance, but what does it relate back to, what class? . . . And disparate treatment [alleged in Count VI]? MS MOON: Race as well, your Honor."). In addition, Plaintiff's counsel confirmed that this count is based factually on Defendant's placement of Plaintiff on TDA. Motion Hearing Tr. 20:17–22 ("THE COURT: So, Count 2 and Count 6 are making the same argument, that Mr. Evans was discriminated against by the Defendant based on his race for his temporary assignment. Count 2 and Count 6, is that how the Court should be viewing those two counts? MS. MOON: Yes, your honor.").

must be 'nearly identical' to the plaintiff[] to prevent courts from second-guessing a reasonable decision by the employer." *Trask*, 822 F.3d at 1192 (citing *Wilson*, 376 F.3d at 1091 (11th Cir.2004)).

Plaintiff here fails to establish the prima facie case for Title VII disparate treatment for the same reasons he failed to establish the prima facie case for racial discrimination, as discussed above, in Section III – A (Count II – Racial Discrimination). Plaintiff has not put forth a sufficiently similar comparator to establish his prima facie case. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for disparate treatment in Count VI.

## IV. CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment, DE 48, in favor of Defendant on all counts of Plaintiff's Complaint, DE 1.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Final Summary Judgment [DE 48] is **GRANTED** as to all counts alleged in the Complaint.

2. Because there are no remaining claims in this case, the Clerk of the Court is ordered to **CLOSE** this case.

3. All pending deadlines are **TERMINATED** and all hearing are **CANCELLED**.

4. Defendant is **ORDERED** to submit a proposed Final Judgment Order to the Court's email address (Rosenberg@flsd.uscourts.gov) in Microsoft Word format within two days of the rendition of this Order.

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, this 5th day of November, 2018.

Copies furnished to Counsel of Record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

22